## No. 22-2938

# United States Court of Appeals
# For the Third Circuit

---

NEW JERSEY SECOND AMENDMENT SOCIETY
AND ALEXANDER ROUBIAN,
*Plaintiffs-Appellants,*

v.

NEW JERSEY PRESS ASSOCIATION
AND PEGGY STEPHAN ARBITELL,
*Defendants-Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

## PETITION FOR PANEL REHEARING
### (*FED.R.APP.P.* 40(a))

---

ALBERT J. RESCINIO, ESQ. (NJ 034331989)
LAW OFFICE OF ALBERT J. RESCINIO, L.L.C.
1500 ALLAIRE AVENUE – SUITE 101
OCEAN TOWNSHIP, NEW JERSEY 07712
TELEPHONE:    (732) 531-2005
TELEFAX:    (732) 531-8009
ATTORNEYS FOR PLAINTIFFS-APPELLANTS

## I.    INTRODUCTION:

In this Petition Appellants New Jersey Second Amendment Society and Alexander Roubian ("Appellants") collectively ***move for Panel rehearing only***[1] pursuant to *Fed.R.App.P.* 40 and *L.A.R.* 40.0 before the Honorable Michael Chagares, Chief Judge, and the Honorable Stephanos Bibas and the Honorable Paul Matey, Circuit Judges, of their September 6, 2023 "NOT PRECEDENTIAL" Opinion and September 6, 2023 Judgment (***See* Opinion attached hereto at "Exhibit A" and Judgment attached hereto at "Exhibit B" as required by *L.A.R.* 40.1(a)).**

## II.    STANDARD OF REVIEW:

---

[1]    Third Circuit *Internal Operating Procedures* ("IOP"), CHAPTER 9, EN BANC CONSIDERATION, §9.5.1, provides as follows:

> It is presumed that a petition for rehearing before the panel or suggestion for *en banc* rehearing filed by a party as provided by *Fed.R.App.P.* 40(a) or 35(b) requests both panel rehearing and rehearing *en banc*, ***unless the petition for panel rehearing under Rule 40(a) states explicitly that it does not request en banc rehearing under Rule 35(b).*** (Emphasis added).

To be clear, Appellants are ONLY at this point moving in this Petition for Panel rehearing, reserving the right to move for full *en banc* review after this Petition is decided.

Firstly, for purposes of an appeal of a District Court's dismissal under *F.R.Civ.P.* 12(b)(6), both the District Court below and now the Third Circuit now on appeal, are required, for purposes of review, to treat all factual allegations made in the Second Amended Complaint as true. A Petition for Panel Rehearing is governed by Fed.R.App.P. 40 and provides in relevant part that: *"The petition must state with particularity each point of law or fact that the petitioner believes the court has overlooked or misapprehended and must argue in support of the petition."*

## III. IN THE SEPTEMBER 6, 2023 OPINION THE PANEL HAS 'OVERLOOKED" AND / OR "MISAPPREHENDED" CASE DETERMINATIVE FACTS REQUIRING REHEARING UNDER *FED.R.APP.P.* 40(a):

In the September 22, 2022 District Court Opinion **(See A-168)** and dismissal Order **(See A-175)** under appeal the District Court itself never once took it upon itself to *sua sponte* questioned the undisputed threshold issue of whether Appellants' Second Amended Complaint **(See A-143)** had alleged sufficient facts to satisfy Article III standing principles for them to be entitled to pursue their legal claims against Appellees New Jersey Press Association and Arbitell. Likewise both below and now on appeal Appellees New Jersey Press Association and Arbitell never once questioned or raised the issue on the (to that stage in the litigation, undisputed) point that Appellants' had sufficiently demonstrated the requisite threshold Article III standing to pursue their legal claims in the Second Amended Complaint. This should

be no surprise because ***when all of the facts as actually alleged by Appellants in the Second Amended Complaint are considered and evaluated in the context of clearly established and well known Article III standing jurisprudence*** there is little reasonable question but that Appellant's have sufficiently demonstrated the requisite threshold Article III standing. The initial conclusion by this Panel otherwise in the September 6, 2023 Opinion and Judgment is a conclusion that can only be reached when the relevant facts as alleged are simply ignored and only a few facts "cherry picked" and taken out of context are part of the evaluation. Factual details matter. Otherwise stated, there are particular dispositive and determinative points of fact as outlined herein that the Panel inexplicably either "... *overlooked* ..." or "... *misapprehended* ..." which requires Panel rehearing. Appellants therefore request that the Court enter an Order vacating the September 6, 2023 Opinion and Order and a further Order setting the matter down for oral argument so that when the actual final decision on this appeal is ultimately made (whatever that may be) there be no question but that it is based upon the ***accurate and actual facts as alleged by Appellants in the Second Amended Complaint at issue,*** and not on merely approximately 7% of those actual facts acknowledged by the Panel, omitting the determinative factual allegations. *See Fed.R.App.P.* 40(a)(2).

## IV. THE PANEL'S SEPTEMBER 6, 2023 *SUA SPONTE* "STANDING" RULING IS BASED ON INCORRECT FACTS AND A COMPLETE MISCHARACTERIZATION OF APPELLANTS ACTUAL FACTUAL CLAIMS:

The Panel saw something a raft of lawyers and a Federal District Court Judge below never saw:  That Appellants' ostensibly lacked Article III standing to assert their claims against the against the New Jersey Press Association and Arbitell , and the Panel *sua sponte* raised this issue themselves, and used it as a basis to support dismissing the Appellant's claims., ruling in relevant part as follows:

> A plaintiff has standing only if she "*allege[s] personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.*" (citations omitted) Appellants have not.
>
> First, Appellants contest Roubian's exclusion from the 2020 press briefings for lacking an acceptable entry credential. But that is not fairly traceable to NJPA's 2018 denial because the credentials are valid for only one year, and Roubian never alleged he applied again. In other words, "there was always a zero percent chance that" Roubian could have entered the 2020 briefings with the 2018 credentials since they would have long expired. (citation omitted) ***Arbitell's statement to state police that Roubian lacked valid NJPA credentials does nothing to change that fact. Appellants cannot sue Appellees for excluding Roubian from the briefings on this theory.*** (Emphasis added).
>
> Second, Appellants challenge the denial of Roubian's 2018 application for NJPA credentials. But the factual allegations in Appellants' Second Amended Complaint and filings before this Court center on one harm – Roubian's exclusion from the 2020 press briefings. And Appellants "must demonstrate standing for each claim [they] seek[] to press and for each form of relief that is

4

sought." (citation omitted) But, again, ***Roubian could not use a 2018 pass to enter a 2020 event. Because Appellants' claimed injury is not fairly traceable to NJPA's conduct, they lack standing to proceed with their suit.*** (Emphasis added).

**[*See* "Exhibit A" at pages 3-4].**

The passage just cited verbatim from the Panel's September 6, 2023 Opinion makes clear that the Panel understood plaintiff's factual and Federal First and Fourteenth Amendment, New Jersey State Constitution, and New Jersey common law legal claims against the New Jersey Press Association and Arbitell to be based upon very limited facts. First, the Panel limits the factual basis of Appellants' claims as being that both the New Jersey Second Amendment Society and Roubian had applied for and been denied "New Jersey Press Credentials" in 2018 (which are good for 1 year) that therefore in year 2020 (2 years later) that "... *Arbitell's statement to state police that Roubian lacked valid NJPA credentials ...* " was merely a true statement of fact. Second, the Panel notes that in 2020 Roubian could not have used an expired 2018 New Jersey Press Credential in 2020 to gain access to the press briefings (*which is of course true) and therefore the Appellants' injury is not traceable to the 2018 denial, and therefore Appellants do not have Article III Standing. The Panel ruled that the 2018 denial had nothing to do with Appellant's from being excluded from the Press Briefing in 2020.

The problem with the Panel's analysis in this regard is that only approximately 7% of plaintiff's factual allegations are recognized and noted and then evaluated out of context. More importantly what the Panel cites as Appellants' actual factual claims against the New Jersey Press Association and Arbitell are simply NOT AT ALL WHAT APPELLANTS ARE CLAIMING SUPPORT THEIR CAUSES OF ACTION AGAINST SUCH PARTIES! To understand this, one only has to simply actually read the relevant portions of the factual allegations Appellants actually made in the Second Amended Complaint at issue. Clearly no one on the Panel actually read the Second Amended Complaint.

## V. THE APPELLANT'S ACTUAL ALLEGATIONS OF WHAT THE NEW JERSEY PRESS ASSOCIATION AND ARBITELL DID THAT WAS WRONG AND ACTIONABLE TO CAUSE APPELLEEES HARM IN 2020:

Specifically relevant to the Appellants' actual stated factual claims against the New Jersey Press Association and Arbitell are as follows:

\*\*\*

29. More specifically on April 7, 2020 State Police Officer Murray again continued to refuse plaintiff Roubian and NJ2AS access to the Governor's daily briefing claiming that plaintiffs were not deemed a "credible news agency" by either the Governor's Office or by defendants NJPA and defendant Arbitell. *State Police Officer Murrary advised plaintiff Roubian that he had specifically spoken on several occasions with "Peggy" (defendant Arbitell) and Seargent Murray advised*

6

*plaintiff Roubian that defendant Arbitell had specifically and unequivocally advised him (Murray) that she was aware of and knew exactly who plaintiff Roubian was, and that plaintiff Roubian "… 100% was NOT working with or in any way affiliated with defendant NJPA, nor did he have any form of press credentials she was aware of…", and that as far as plaintiff's right to admission into the Governor's daily Press Briefings, that defendant Arbitell had specifically stated that to him that since "… Roubian did not have press credentials, he was NOT "good to go", and that Roubian should definitely NOT be admitted to the Governor's daily press briefing as he was not a credible news organization." This exchange between plaintiff Roubian and State Police Officer Murray was captured on film and can be seen at youtube.com/watch?v=IEOcFy9NXQM&feature=youtu .be . (Titled "Press denial 3"). State Police Officer Murray made it clear that defendants NJPA and Arbitell had the legal authority to permit or deny plaintiff Roubian and NJ2AS admission to the daily Governor's Press Briefings and that he was merely following what he had been told by defendant Arbitell.* (Emphasis added).

**30.** *Point in fact, defendant Arbitell intentionally knowingly gave State Police Officer Murray false information to the effect that (1) plaintiffs Roubian and NJ2AS were "not credible news" and (2) that she (defendant Arbitell) had the authority to decide whether plaintiffs Roubian and NJ2AS should be admitted to the Governor's daily press briefings. In providing such false information defendant Arbitell full well knew that her false statements were to be used as a basis to deny plaintiffs access to the daily Governor's Press Briefings to the detriment of plaintiffs and for the benefit of NJPA members and holders of NJPA Press Credentials. Moreover, State Police Officer Murray was also well aware that the statements by defendant Arbitell were false but he nevertheless claimed to be required to follow directions from defendant Arbitell as to who should be admitted and who should not be admitted to the daily*

7

> *Governor's Press Briefings. Defendant Arbitell and non-party State Police Officer Murray in fact knowingly and intentionally conspired together to retaliate against and to knowingly deprive plaintiffs NJ2AS and Roubian access to the Governor's daily press briefings specifically because they disagreed with the plaintiffs' political views, specifically plaintiffs expansive view of Second Amendment rights.* (Emphasis added).
>
> **31.**    While admittedly oddly delegated a degree state authority, defendant Arbitell is a "state actor" for purposes of 42 U.S.C. 1983 and knowingly wrongfully used her authority beyond what the law permitted in furtherance of a conspiracy with State Police Officer Murray (and perhaps others yet to be identified) so as to wrongfully deny plaintiff Roubian and NJ2AS access the daily Governor's press briefings proximately damaging such plaintiffs.

**[*See* Second Amended Complaint at A-143, at ¶29, ¶30 & ¶31].**

So contrary to the Panel's total mischaracterization of Appellants' claims against the New Jersey Press Association and Arbitell that (so says the Panel) are strictly limited to the undisputed fact that in 2018 Appellants had applied for and been denied a New Jersey Press Pass, in truth the actual claims of Appellants are for "real time" wrongful conduct engaged in by the New Jersey Press Association and Arbitell in 2020, to wit:

- That in 2020 Arbitell stated to Sergeant Murray that plaintiff Roubian was not working with or in any way affiliated with defendant NJPA (*which was true, and in and of itself standing alone is not actionable);

8

- That in 2020 Arbitell stated to Sergeant Murray that Appellants did not have any form of press credentials that Arbitell was aware of (*again, which was true, and in and of itself standing alone is not actionable);

- That in 2020 Arbitell stated to Sergeant Murray **(1)** that Appellants were NOT "good to go", and **(2)** that Appellant Roubian himself should definitely NOT be admitted to the Governor's daily press briefing and **(3)** that Appellants were not part of a "credible" news organization. (*All of which conduct by Arbitell IS MOST CERTAINLY ACTIONABLE).

In 2020, blindly relying upon Arbitell's statements – some true, most not – and also relying upon on Arbitell's apparent ultimate authority on the issue of who got or did not get admitted to the Press Briefing, Sergeant Murray accepted and relied upon Arbitells 2020 statements **(1)** that Appellants were NOT "good to go", and **(2)** that Appellant Roubian himself should definitely NOT be admitted to the Governor's daily press briefing and **(3)** and that Appellants were not part of a "credible" news organization, was used by Sergeant Murray as the specific basis for denying Appellants admission to the Press Briefing. Otherwise stated, Appellants do not allege that they were denied access to the Press Briefing in 2020 because they had been denied a Press Pass in 2018, but rather that they were denied access to the

Press Briefing in 2020 specifically because of Arbitell's conduct and words in 2020 which were made under color of New Jersey State Law, and were also made to Sergeant Murray with apparent authority on the issue of who should and should not be admitted to the Press Briefings. THOSE are Appellant's claims.

To establish Article III standing, a plaintiff must demonstrate "(1) an injury in-fact, (2) a sufficient casual connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Finkelman v. National Football League*, 810 *F.3d* 187, 193 (3d Cir. 2016) (citing *Neale v. Volvo Cars of North America, LLC*, 794 *F.3d* 353, 358-359 (3d Cir. 2015)).

Here, Appellants specifically allege that the 2020 actions of Arbitell were the direct and proximate cause of Appellants being denied access to the Press Briefing, not the 2018 denial of a Press Pass. And these allegations are not merely traceable to Arbitell, these actions and words by Arbitell were memorialized on tape! Certainly being denied access to the Press Briefing specifically because Arbitell told Sergeant Murray to deny Appellants access equates with Appellants alleging "... *some specific identifiable trifle of injury*..." which is traceable to the defendant, *Blunt v. Lower Merion School District*, 767 *F.3d* 247, 278 (3d Cir. 2014), and which is all that is required of Appellants at this stage of the litigation. *See Lujan v. Defenders of Wildlife*, 504 *U.S.* 555 (1992).

**10**

The Panel erred in its analysis and decision. Appellants have Article III standing. It is not permissible for a Court to "cherry pick" facts and make conclusions from those facts which are not the Appellants statements (that the 2018 application denial was the reason or basis for the Appellants complaint) while excluding the actual dispositive factual claims made by a litigant (that the basis for the complaint was the actions taken by the Respondent in 2020) for the Court to reach a desired result. This Panel should grant this Petition and should remedy this injustice and on rehearing properly apply the actual facts to the law. If this is done the Appellants must prevail, and they are entitled to no less. Appellants have set forth more than enough for the claim to proceed forward to an answer and discovery..

## CONCLUSION:

For the foregoing reasons the Court should grant this Petition for Panel rehearing.

Respectfully submitted,

/s/ *Albert J. Rescinio*

ALBERT J. RESCINIO, ESQ.

## COMBINED CERTIFICATIONS:

**ALBERT J. RESCINIO, ESQ.,** attorney for Appellant David Greco, hereby says as follows:

### Bar Membership:

1.    I am a member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.

### Contested or Un-Contested Motion:

2.    The Appellees neither presumably oppose this Petition being granted.

### Electronic Brief in PDF Format:

3.    In accordance with *L.A.R.* 113.3(b) I hereby verify that this Petition was filed electronically in PDF text format is both legible and complete.

### Exhibits All True Copies of Originals:

4.    All copies attached to this Petition are true copies of the original documents.

### Virus Check:

5.    I certify pursuant to *L.A.R.* 31.1(c) that a virus check was performed on the PDF copy of this Petition filed in this case using Windows Security Essentials® and Malwarebytes® virus check and that no virus was detected and that the PDF version of the Petition is virus free.

## Word Count:

6.  Pursuant to *Fed.R. App.P.* 27(d)(2) and *Fed.R. App.P.* 32(g)(1) I certify that this Petition, excluding exempt items, does not exceed the maximum type volume limitation of 3,500 words. This document has 2,818 words.

## Service:

7.  Lastly I have caused this Petition to be filed electronically pursuant to *L.A.R.* 27.2.

Pursuant to 28 *U.S.C.* §1746 I hereby declare, certify, verify, and state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 18, 2023.

/s/ *Albert J. Rescinio*
_____

**ALBERT J. RESCINIO, ESQ.**

# "Exhibit A"

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 22-2938

———————

NEW JERSEY SECOND AMENDMENT SOCIETY,
A not for profit corporation of the State of New Jersey;
ALEXANDER ROUBIAN, Individually and in his capacity as
the President of the New Jersey Second Amendment Society
and in his capacity as a reporter and journalist for www.NJ2A.org,
Appellants

v.

NEW JERSEY PRESS ASSOCIATION;
JOHN DOES 1-20, Fictitious names for the yet to be identified members
of the New Jersey State Police Department,
Civilian Security and Decision Makers;
PEGGY STEPHAN ARBITELL, Individually and in her capacity as
the business manager for defendant NJPA

———————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3-20-cv-05228)
District Judge: Honorable Michael A. Shipp

———————

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 23, 2023

Before: CHAGARES, *Chief Judge*, BIBAS, and MATEY, *Circuit Judges*.

(Filed September 6, 2023)

———————

OPINION*

———————

MATEY, *Circuit Judge.*

The New Jersey Second Amendment Society and Alexander Roubian ("Appellants") challenged Roubian's denied press credentials and entry into press briefings. Neither has standing to sue the New Jersey Press Association ("NJPA") or Peggy Arbitell (collectively, "Appellees"), so we will vacate the District Court's judgment and remand with instructions to dismiss without prejudice.

**I.**

NJPA annually issued press credentials "to news organization employees [and] independent contractors who have regular contact with" first responders. Response Br. 1. Roubian applied for one in 2018 but was denied because his "organization is a civil advocacy group with a targeted topic/audience," not "a news organization covering news of a general nature." App. 183. Two years later, and still without a pass, Roubian was denied entry into press briefings with Governor Phil Murphy. Appellants sued NJPA and others, alleging violations of federal and state law.[1] After some defendants settled the matter, the District Court dismissed with prejudice Appellants' remaining claims. Appellants appeal that decision.

———————

\* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Appellants alleged violations of the First and Fourteenth Amendments, the New Jersey State Constitution, and New Jersey statutory and common law.

**II.**

We begin and end with standing because "[t]he Constitution gives federal courts

the power to adjudicate only genuine 'Cases' and 'Controversies.'" *California v. Texas*,

141 S. Ct. 2104, 2113 (2021) (quoting U.S. Const. art. III, § 2). Standing is a

jurisdictional requirement, *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007),

so when its conditions are unmet, we have no authority under Article III to consider the

merits of the case, *In re Boy Scouts of Am.*, 35 F.4th 149, 156 (3d Cir. 2022). A plaintiff

has standing only if she "allege[s] personal injury fairly traceable to the defendant's

allegedly unlawful conduct and likely to be redressed by the requested relief." *California*

*v. Texas*, 141 S. Ct. at 2113 (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342

(2006)). Appellants have not.

*First*, Appellants contest Roubian's exclusion from the 2020 press briefings for

lacking an acceptable entry credential. But that is not fairly traceable to NJPA's 2018

denial because the credentials are valid for only one year, and Roubian never alleged he

applied again. In other words, "there was always a *zero* percent chance that" Roubian

could have entered the 2020 briefings with the 2018 credentials since they would have

long expired. *Finkelman v. Nat'l Football League*, 810 F.3d 187, 198 (3d Cir. 2016).

Arbitell's statement to state police that Roubian lacked valid NJPA credentials does

nothing to change that fact. Appellants cannot sue Appellees for excluding Roubian from

the briefings on this theory.

*Second*, Appellants challenge the denial of Roubian's 2018 application for NJPA

credentials. But the factual allegations in Appellants' Second Amended Complaint and

3

filings before this Court center on one harm—Roubian's exclusion from the 2020 press briefings. And Appellants "must demonstrate standing for each claim [they] seek[] to press and for each form of relief that is sought." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (citation omitted). But, again, Roubian could not use a 2018 pass to enter a 2020 event. Because Appellants' claimed injury is not fairly traceable to NJPA's conduct, they lack standing to proceed with their suit.

## III.

For these reasons, we will vacate the District Court's judgment and remand with instructions to dismiss without prejudice for lack of standing.

4

# "Exhibit B"

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-2938

_____

NEW JERSEY SECOND AMENDMENT SOCIETY,
A not for profit corporation of the State of New Jersey;
ALEXANDER ROUBIAN, Individually and in his capacity as
the President of the New Jersey Second Amendment Society
and in his capacity as a reporter and journalist for www.NJ2A.org,
Appellants

v.

NEW JERSEY PRESS ASSOCIATION;
JOHN DOES 1-20, Fictitious names for the yet to be identified members
of the New Jersey State Police Department,
Civilian Security and Decision Makers;
PEGGY STEPHAN ARBITELL, Individually and in her capacity as
the business manager for defendant NJPA

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3-20-cv-05228)
District Judge: Honorable Michael A. Shipp

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 23, 2023

_____

Before: CHAGARES, *Chief Judge*, BIBAS, and MATEY, *Circuit Judges*.

_____

JUDGMENT

_____

This cause came to be considered on appeal from the United States District Court for the District of New Jersey and was submitted under Third Circuit L.A.R. 34.1(a) on June 23, 2023. On consideration whereof, it is now hereby **ORDERED** and **ADJUDGED** by this Court that the order of the District Court entered September 27, 2022, is hereby **VACATED** and this matter is **REMANDED** with instructions to dismiss without prejudice. Costs will be taxed against Appellees.

All of the above in accordance with the Opinion of this Court.

ATTEST:

s/Patricia S. Dodszuweit
Clerk

DATED: September 6, 2023

2